IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| KYLE BRANDON, | * |
| Plaintiff, | * |
| v. | * |
| | *   Case No. 3:16CV00032-JJV |
| BLAINE CAGLE, Jail Guard, Greene | * |
| County Detention Center; *et al.* | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Kyle Brandon ("Plaintiff") brought this action alleging Defendants violated his First Amendment right to freely exercise his religion. He also says he has suffered 'hazing' and verbal harassment while incarcerated at the Greene County Detention Center due to his conversion to Buddhism. (Doc. No. 2.)

Defendants have filed a Motion for Summary Judgment. (Doc. No. 18.) Plaintiff has not responded and the time for doing so has expired. Therefore, the matter is ripe for a decision and I have carefully reviewed the pleadings. After consideration, for the following reasons, I find Defendants' Motion for Summary Judgment should be GRANTED.

**II.   FACTS**

Mr. Brandon says after converting to Buddhism, he notified jailers so he could change his religious preferences, including his diet. (Doc. No. 2 at 4.) After notifying jailers of his religious preferences, Defendant Cagle entered the pod and told everyone to get on the wall. (*Id.*) "At that time Cagle stated, 'Don't worry everybody is good except for Kyle Brandon.'" (*Id.*) Plaintiff says Defendant Cagle made some derogatory remarks about his being Buddhist and then "took his

1

bedding, blanket and covered his window with a thermal mat[].ced" (Doc. No. 2 at 6.)  The next day, Defendant Cagle returned and attempted to issue a false disciplinary against Plaintiff.  (*Id.*)  Defendants then kept Plaintiff in "lockdown" status without any bedding or a blanket and denied him his "mandatory hour out as well as [his] shower."  (*Id.*)  "On the fourth night Sgt. Marcus granted [Plaintiff his] shower and hour out.  Also he removed the thermal mat[] off [the] window."  (*Id.*)  Plaintiff says, "Since this event happened I've been served the same tray for over 30 days 3 times a day.  I've filed many request[s] and [grievances] due to this situation."  (*Id.*)  Plaintiff complains that his food is "refridgerator [*sic*] cold [with] fruit sitting in a puddle of sweat."  (*Id.*)  Plaintiff adds, "Sgt. Zach Croker has knowledge of these events and did not stop them.  Also, Ms. Huckabee did not respond to this matter and also had knowledge of these events."  (*Id.*)

### III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the

outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.   ANALYSIS

Defendants advance three arguments in support of their Motion, namely: (1) Plaintiff has failed to establish official capacity liability; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff has failed to establish any constitutional violation.

### A.   Official Capacity Claims

Plaintiff's official capacity allegations are, in essence, claims against Greene County itself. *Liebe v. Norton*, 157 F.3d 574, 578-9 (8th Cir. 1998). In order to state a successful claim against a county defendant, a plaintiff must establish that some county policy or "persistent and widespread" unconstitutional practice was the cause of his alleged injury. *Jane Doe "A" v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff has failed to allege the existence of such a custom or practice in the instant case. Accordingly, his official capacity claims must be dismissed.

### B.   Qualified Immunity

Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously

permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

In analyzing qualified immunity, I will first address whether Defendants have violated Plaintiff's rights. For the following reasons, I find no violation of Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

        1.        First Amendment/Free Exercise of Religion

While inmates retain the right to freely practice their chosen religion, adherence to those practices may be regulated by prison authorities so long as the regulations in question are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Defendants argue they did not infringe on Plaintiff's First Amendment rights. (Doc. No. 19 at 6.) In the alternative, they argue their actions were in accordance with the *Turner* factors. In carefully considering this issue, given the evidence provided by Defendants (Docs. No. 20-2 and 20-3), I find Plaintiff has failed to state a constitutional violation. Therefore, I need not consider the penological

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

4

justification offered by Defendants.

Plaintiff requested a meal accommodation on October 8, 2015, and Jail Administrator York-Huckabee informed Plaintiff that his request needed to go through "admin or medical." (Doc. No. 20-2 at 32.) Apparently, a request also went to Nurse Wright who stated, "You were booked in as Baptist and put on a regular tray and it will stay a regular tray until a Buddhist Monk comes to the jail and declaires [*sic*] you as Buddhist." (Doc. No. 20-2 at 33.) I note that had Defendants not responded to Plaintiff in this *highly* unprofessional manner, the outcome of this case might likely be different. Nevertheless, the next day Plaintiff submitted two additional requests and Officer Looney responded, "Has been changed in Jail Management System" and "done." (*Id.* at 34, 35.)

Apparently it was not "done" and, on October 15, 2015, Plaintiff submitted another request. (*Id.* at 38.) In response, Sgt. Croker instructed Plaintiff to "Resubmit to correct group." (*Id.*) Plaintiff submitted additional meal requests that eventually resolved the issue, albeit a month after his original request. (*Id.* at 41, 42.) From that point on, it appears Plaintiff was provided a vegetarian meal to accommodate his religious request. (Doc. No 20-3.) Despite Nurse Wright's inappropriate response, it appears that jailers - on balance - fairly met Plaintiff's religious needs.

In addition to his vegetarian meal request, Plaintiff requested a Buddhist text. On October 16, 2015, Plaintiff requested a copy of the "Lotus Sutra" and Chaplain Wells responded, "Not sure what that is but [I] will [G]oogle it and see if [I] can find it." (Doc. No. 20-2 at 40.) On November 10, Plaintiff again requested the text and Chaplain Wells responded, "Kyle, [I] made a couple calls and could not find a donor. We are required by ADC regs that anything we give to an inmate must be donated. Your family or friends may purchase one for you and bring [it] to you." (*Id.* at 51.) Chaplain Wells later provided "chapter ten of the Lotus Sutra," because Plaintiff acknowledged its receipt and requested "another chapter or two." (*Id.* at 57.) Chaplain Wells

5

responded, "I will see what [I] can do." (*Id*.)

I do recognize that, although Plaintiff started receiving his preferred vegetarian meal, he remained unsatisfied with the quality of the meal. (Doc. No. 20-2 at 62.) As he states in his Complaint, Plaintiff reported that the meals were "refridgerator [*sic*] cold" and generally unsavory.

So, although it took approximately a month to provide Plaintiff with his requested meal, jailers nonetheless met his religious needs. Plaintiff was not denied his religious request, it was only delayed. And, according to the records provided, I find no evidence to conclude there was any sinister reason for the delay. Furthermore, the fact that Plaintiff did not like the meal provided fails to support a First Amendment claim. Therefore, I find no violation of Plaintiff's First Amendment rights and summary judgment must be granted on this point.

### 2. Hazing

Plaintiff claims he was subjected to "hazing" by Defendant Cagle. These claims, if taken as true, fail to state a viable constitutional claim. *See Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) ("[v]erbal threats do not constitute a constitutional violation"). Accordingly, Defendants are entitled to qualified immunity on these verbal harassment claims.

### 3. False/Retaliatory Discipline[2]

It is well settled that retaliation claims fail if the alleged disciplinary violations were issued for the actual violation of prison rules. *See Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). In weighing Plaintiff's disciplinary violations, I must consider whether they were supported by "some evidence." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). The Court of Appeals for the Eighth Circuit has held "a report from a correctional officer, even if disputed by the inmate

---

[2]Plaintiff was in the Greene County Detention Center awaiting transfer to the Arkansas Department of Correction for the completion of his sentence.

and supported by no other evidence, legally suffices as "some evidence" upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id*. at 831. Here, Defendants have provided the reports serving as the basis for Plaintiff's disciplinary conviction. (Doc. No. 20-2 at 69-70.) And Plaintiff was convicted of the rules violations by impartial hearing officers. (Doc. No. 20-4.)

Additionally, Plaintiff is unable to show he has been subjected to a due process violation. In order to maintain an actionable procedural due process claim, an inmate must show that he has been deprived of some constitutionally protected liberty or property interest. *See Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("A due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In prisoner cases, a constitutionally protected liberty interest will arise only when the prisoner can show that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," as contemplated in *Sandin v. Conner, supra* at 484 (holding that disciplinary segregated confinement of an inmate falls within expected parameters of prison life, and does not represent an "atypical and significant hardship," which would create a protected liberty interest).

The United States Court of Appeals for the Eighth Circuit has interpreted *Sandin* as follows:

> *Sandin* concluded that the inmate had no liberty interest in avoiding the disciplinary confinement in issue in that case because that confinement did not present an atypical and significant deprivation in relation to the ordinary incidents of prison life. Therefore, the Due Process Clause is not implicated despite the mandatory nature of the rules relating to the imposition of disciplinary confinement. The Court stated that there are some deprivations, and not necessarily those so severe as to independently trigger due process protection, against which states could conceivably create a liberty interest. Those are deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences.

*Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996); See also, *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that denial of visitation, exercise privileges, and religious services

during thirty-seven day segregation was not an atypical, significant hardship, which would support the denial of a protected liberty interest, and stating that "[w]e have consistently held that demotion to segregation, even without cause, is not itself an atypical and significant hardship"); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment, and therefore, was not denied due process); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (prisoner has no liberty interest in avoiding segregation).

Mr. Brandon's conditions of confinement described in his Complaint do not amount to "atypical and significant hardships." While I agree that losing any privilege is surely a hardship to a prisoner, under the law, these conditions do not amount to atypical and significant hardships in relation to the ordinary incidents of prison life. Therefore, Plaintiff's claims in this regard should be dismissed.

### 4. Conditions of Confinement

Plaintiff makes numerous claims that his rights were violated with regard to his conditions of confinement. A defendant incurs liability on an Eighth Amendment conditions of confinement claim only where they act with deliberate indifference. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). An evaluation of deliberate indifference requires both an objective showing that a substantial risk to the inmate existed and a subjective determination that the defendant had knowledge of that risk, but disregarded it. *Davis v. Oregon County, Mo.*, 607 F.3d 543, 548 (8th Cir. 2010).

Giving Plaintiff all benefit of the doubt, I find none of his claims amount to exposing him to a "substantial risk." Still more damaging to Plaintiff's conditions claims are his lack of an actual injury. Given that a section 1983 action is a form of tort claim, a plaintiff must suffer an actual

injury in order to recover compensation. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Here, Plaintiff reported no injury as a result of his allegedly unconstitutional conditions of confinement. Based on the foregoing, I find that Plaintiff's conditions of confinement claims must also be dismissed.

## V.   CONCLUSION

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 18) is GRANTED, and Plaintiff's Complaint is DISMISSED with prejudice.

IT IS SO ORDERED this 22nd day of November, 2016.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE